UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JIRAH ERIC KELLEY

v.                                                         C.A. NO. 10-233 ML

A.T. WALL ET AL.

REPORT AND RECOMMENDATION

Jacob Hagopian, Senior United States Magistrate Judge

Plaintiff Jirah Eric Kelley ("Plaintiff"), *pro se*, an inmate at the Adult Correctional Institutions (the "ACI"), filed a complaint against A.T. Wall, Director of the Rhode Island Department of Corrections ("RIDOC"), and correctional officer Captain Aceto (together, the "Defendants") pursuant to 42 U.S.C. § 1983 (the "Complaint" or "Cmpt.") (Docket # 1).

Presently before the Court are two motions filed by Plaintiff seeking injunctive relief (the "Motions") (Dockets # 4 & # 9). In the first motion, Plaintiff seeks a Court order requiring Defendants to place him in the "A2 housing unit" and "refrain from retaliatory actions ... based on [P]laintiff's efforts to file lawsuits to protect his rights." Docket # 4 (the "First Motion") at p. 1. In the second motion, Plaintiff seeks a Congressional investigation of the undersigned as well as United States Magistrate Judge Martin and implies that he seeks a Court order requiring Defendants to transfer him out of the Prudence One cellblock where he is currently housed. Docket # 9 (the "Second Motion"). The Motions shall be interpreted as motions for preliminary injunctions pursuant to Rule 65 of the Federal Rules of Civil Procedure.

Defendant Director Wall has apparently been served in this action and has filed a Motion for Summary Judgment in response to the Complaint (Docket # 6). Defendant Captain Aceto has not yet been served. Although the First Motion was filed prior to Defendant Wall being served, Defendant Wall has objected to the Second Motion (Docket #10).

These matters have been referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons stated below, I recommend that the Motions be DENIED.

BACKGROUND

The following background is alleged collectively in the Complaint, an affidavit of Plaintiff filed simultaneously with the Complaint ("Affidavit") (Docket # 2), and the Motions, including the exhibits attached thereto. At some point while Plaintiff was housed in segregation

1

at the ACI, two correctional officers circulated the statement that Plaintiff was a snitch for the Massachusetts state police. Plaintiff informed various ACI officials, including Defendants Captain Aceto and RIDOC Director Wall, that he had been labeled a snitch, had been harassed by young gang-oriented inmates in the Prudence One housing unit, and feared he would not be safe if housed in Prudence One. Cmpt. at p. 2 & Exh. 1. Plaintiff was ordered "to have ALL recreation periods ALONE because of the potential endangerment of his safety." Cmpt. at p. 2. At some later point, Captain Aceto moved Plaintiff to the Prudence One housing unit, despite knowing that Plaintiff complained about potential enemies there and without implementing "standard procedures of investigation, or security." Cmpt. at Exh. 1 & Affidavit at p. 2. Captain Aceto also wrote a memorandum to Plaintiff, stating, in part, "Your allegation to Deputy Kettle claiming that a Correctional Officer was calling you a snitch was fully investigated, and found to have no merit. Your history of making false complaints to manipulate housing assignments, whether it is an inability to walk up the stairs or fear of mice, does not add to your credibility." Cmpt. at Exh. 2 (Memorandum from Captain Aceto to Jirah Kelley dated 4/9/2010).

Plaintiff also alleges that Captain Aceto has been hostile, aggressive, mean-spirited, and intimidating toward Plaintiff, and implies that such attitude is in retaliation for Plaintiff filing a lawsuit in federal court in Massachusetts against various ACI correctional officers (the "Massachusetts Lawsuit"). Affidavit at p. 1. Plaintiff, who explains that he has a history of mental health problems, including severe paranoia, further alleges that Captain Aceto has ignored repeated requests by the ACI clinical director and mental health case manager Charles Dawson to place Plaintiff in the A2 housing unit where inmates with mental histories reside. Affidavit at p. 1; First Motion at p. 1. In a RIDOC Psychiatrist Progress Note that Plaintiff filed as an exhibit to his Affidavit, Dr. Charles Dawson notes, "[Plaintiff] asked to be moved to A block. I will talk to Mr. Manning (Social Worker)." Affidavit (unscanned exhibit at p. 1).

Finally, in the Second Motion, Plaintiff alleges that the undersigned and Magistrate Judge Martin "are egregiously conspiring with the Rhode Island Dept. of Correction [sic] to have this plaintiff harmed, killed and/or assaulted in the form of deliberate indifference to his safety" by refusing to take action on Plaintiff's claims. Second Motion at p. 1.

### DISCUSSION

I.  **Preliminary Injunction Legal Standard**

Plaintiff, as the party moving for preliminary injunction, has the burden of persuasion to show: (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable

2

harm if the injunction is denied; (3) the harm he will suffer outweighs any harm to defendants if the preliminary is granted; and (4) the preliminary injunction will promote the public interest. *McGuire v. Reilly*, 260 F.3d 36, 42 (1st Cir. 2001). A preliminary injunction is an "extraordinary and drastic remedy" and should only be granted if the movant carries the burden of persuasion by a clear showing. *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 1867 (1997). "A failure by the plaintiff to meet any one of the four requirements requires a denial of the motion." *Figueroa v. Wall*, No. 05-415, 2006 WL 898166, *2 (D.R.I. Mar. 14, 2006).

## II. Housing Transfer and Retaliation Issues

Here, Plaintiff has failed to adequately demonstrate a likelihood of success on the merits with respect to his requests for a housing transfer and for protection from alleged retaliation. Although Plaintiff does not specify the constitutional amendments on which he bases his claims, it appears that he is claiming (i) a failure to protect him from a substantial risk of harm in violation of the Eighth Amendment and (ii) retaliation for filing a lawsuit in violation of the First and Fourteenth Amendments.

### A. Failure to Protect Claim

A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970 (1994). The Eighth Amendment requires prison officials to protect inmates from a substantial risk of harm at the hands of fellow inmates. *Id.* at 833. In the context of a failure to protect claim, "a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Fournier v. Northern NH Correctional Facility*, No. 07-264, 2008 WL 2741117, at *3 (D.N.H. July 10, 2008)(quotations omitted).

Here, while Plaintiff does not have, and does not assert that he has, a due process right to the housing of his choice at the ACI, *see Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532 (1976); *Bishop v. State*, 667 A.2d 275, 277 (R.I. 1995), he urges that Defendants are acting with deliberate indifference to the danger he faces in his current housing. Specifically, Plaintiff alleges that Defendant Captain Aceto is subjecting him to a substantial risk of harm by causing him to be housed in Prudence One with inmates who (i) heard two correctional officers label Plaintiff a snitch and (ii) harassed and threatened Plaintiff. Plaintiff further alleges that Captain Aceto placed him in Prudence One despite knowledge of Plaintiff's allegations regarding the foregoing dangers and that Defendant Director Wall acquiesced to Captain Aceto's decision.

3

However, although Plaintiff has submitted affidavits and exhibits in support of his claims, he has failed to show that he is likely to succeed on these claims.

First, while, as Plaintiff urges, an inmate does not have to wait until he suffers an attack to demonstrate an Eighth Amendment violation, he does have to show that serious injury is "sure or very likely" and "sufficiently imminent." *Baze v. Rees*, -- U.S. --, 128 S.Ct. 1520, 1530-31 (2008)(quoting *Helling v. McKinney*, 509 U.S. 25, 33-35, 113 S.Ct. 2475 (1993)); *see also Purvis v. Ponte*, 929 F.2d 822, 825 (1st Cir. 1991). Here, Plaintiff has not done so. Although courts have recognized that being labeled a "snitch" can subject a prisoner to the risk of being injured, *see, e.g., Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir.2001); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984), Plaintiff has not sufficiently demonstrated that the alleged labeling of him as a snitch has subjected him to a substantial risk of harm in this case.

Plaintiff states that he has been taunted, harassed, and threatened by younger gang-oriented inmates; however, he fails to provide any specifics, such as (i) who threatened him or (ii) the content, type, and severity of the threats. Further, other than his own affidavit and letters with his general claim that he has been threatened, Plaintiff has not shown any support for his claim that he is in danger. *Compare Northington v. Marin*, 102 F.3d 1564, 1567 (10th Cir. 1996)(finding that being labeled a snitch subjected prisoner to substantial risk of harm where officer testified that a prisoner identified as a snitch would be subject to beatings by fellow inmates). In fact, the General Population Waiver Form that Plaintiff attaches as Exhibit C to the Second Motion (the "Waiver Form") belies Plaintiff's claims that residence in Prudence One subjects him to a substantial risk of serious harm. Specifically, in the Waiver Form, Plaintiff states the (1) he "can be housed with general Population inmates, without fear or threat to [his] personal safety while housed within the [RIDOC];" (2) he does not "have any problems [h]ere at the Department of Corrections or have any problems with inmate [sic] here in Max;" and (3) he does not want "to be placed in protective custody." Second Motion at Exh. C. Thus, although Plaintiff's further statements in the Waiver Form express his preference to return to "Massachusetts D.O.C." and not be placed in Prudences, *id.*, Plaintiff's first three statements strongly suggest that Plaintiff did not face imminent harm. *See Burrell v. Hampshire County*, No. 99-30269, 2002 WL 596210, at *5-6 (D.Mass. Apr. 10, 2002)(where plaintiff alleged prison officers failed to protect him from attack by a fellow inmate, the court declined to find prison officials acted with deliberate indifference to a substantial risk of serious harm, in part, because plaintiff did not seek protective custody prior to the attack).

Additionally, although Plaintiff urges that Defendant Captain Aceto has ignored the directive of the senior mental health clinician Charles Dawson that Plaintiff be placed in A2 housing, the exhibit to which Plaintiff points in support of this contention does not provide such support. Rather, the exhibit indicates only that Plaintiff requested that he be housed in A2, not that Dr. Dawson recommended or directed such housing. Affidavit (unscanned exhibit at p. 1).

Further, Plaintiff has not shown that Defendants acted or are acting with deliberate indifference to his safety. Instead, Plaintiff's own filings suggest that Defendants took action in response to Plaintiff's allegations. For example, Plaintiff notes in his Complaint that he was ordered to have recreation alone after he initially complained about being labeled a snitch and he attaches a letter from Captain Aceto to his Complaint indicating Captain Aceto's understanding that Plaintiff's allegations of being labeled a snitch were investigated and found to have no merit.

Accordingly, Plaintiff has not demonstrated that he will likely be able to show that Defendants acted with deliberate indifference to expose Plaintiff to a substantial risk of harm in connection with Plaintiff's housing at the ACI. Therefore, I recommend that Plaintiff's motion for preliminary injunctive relief based on such claims be denied.

**B.    Retaliation Claim**

Plaintiff also claims that Defendant Captain Aceto's actions in placing Plaintiff in Prudence One were in retaliation for Plaintiff filing the Massachusetts Lawsuit. A claim asserting retaliation in response to the exercising of a constitutional right consists of three elements: (i) the plaintiff engaged in constitutionally protected conduct; (ii) the plaintiff suffered an adverse action that would deter a person of ordinary firmness from the exercise of the right at stake; and (iii) there was a causal connection between the constitutionally protected conduct and the adverse action. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999); *McDonald v. Hall*, 610 F.2d 16, 18-19 (1st Cir. 1979); *Price v. Wall*, 464 F.Supp.2d 90, 96 (D.R.I. 2006). With respect to the third element, a plaintiff must demonstrate that his constitutionally protected conduct was a motivating factor for the adverse action and that the retaliatory act would not have occurred "but for" the protected conduct. *McDonald*, 610 F.2d at 18. A chronology of events may be adequate to support an inference of retaliation. *See Ferranti v. Moran*, 618 F.2d 888, 892 (1st Cir. 1980); *McDonald*, 610 F.2d at 18. Further, "[c]ourts are appropriately skeptical of prisoner retaliation claims, as 'virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act.'" *Spies v. Kelleher*, 151 Fed.Appx.

5

72, 73 (2ᵈ Cir. 2005)(citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992 (2002)).

Here, Plaintiff has failed to establish that he will likely be able to show that the adverse action he claims to have suffered (being placed in Prudence One at some point in 2010) was causally connected to the Massachusetts Lawsuit he filed in 2009. Although Plaintiff states that Defendant Captain Aceto treated him harshly, including by housing him in Prudence One, as a result of the Massachusetts Lawsuit, he has not shown any connection between the two. Accordingly, I recommend that Plaintiff's claim for preliminary injunctive relief based on alleged retaliation be denied.

### III.  Congressional Investigation

It is not clear from the Second Motion if Plaintiff is simply stating a request that Congress investigate the undersigned and Magistrate Judge Martin or if he is seeking a Court order requiring Congress to perform such investigation. However, to the extent he moves for a Court order, such motion should fail.

First, pursuant to the separation-of-powers doctrine, it is not within the purview of the Court to order Congress to undertake an investigation. *Cf. Lewis v. D.C. Judiciary*, 534 F.Supp.2d 84, 85 (D.D.C. 2008)(separation-of-powers doctrine precludes courts from compelling Congress to adopt certain rules); *Orta Rivera v. Congress of U.S.*, 338 F.Supp.2d 272, 279 (D.P.R. 2004)(Court lacks authority to order Congress to take legislative action on granting Puerto Rico statehood or independence); *Trimble v. Johnston*, 173 F.Supp. 651, 653 (D.D.C. 1959) ("[T]he Federal courts may not issue an injunction or a writ of mandamus against the Congress").

Additionally, a party moving for a preliminary injunction must establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint. *See Devose v. Herrington*, 42 F.3d 470, 471 (8ᵗʰ Cir. 1994); *DeWitt v. Wall*, No. 01-65, 2001 WL 1018332, at *1 (D.R.I. June 05, 2001). Plaintiff's request for an investigation by Congress is not related to the conduct complained about in the Complaint, but instead asserts new and distinct allegations.

Further, Plaintiff provides absolutely no support, and for that matter could not provide any support, for his bald assertions that the undersigned and Magistrate Judge Martin have conspired with RIDOC officials to cause Plaintiff harm.

Accordingly, Plaintiff's motion for an injunction ordering a Congressional investigation should be denied. I so recommend.

## CONCLUSION

In summary, Plaintiff (i) has not shown a likelihood of success on the merits of the claims underlying his request for an order requiring Defendants to transfer Plaintiff's ACI housing and (ii) has not shown that the Court should order a Congressional investigation. Therefore, I recommend that the Motions be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Fed R. Civ. P. 72(b); LR Cv 72(d). Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986) (per curiam); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir. 1980).

_____
Jacob Hagopian
Senior United States Magistrate Judge
November 30, 2010